Justice Souter,
dissenting.
I respectfully dissent on the ground that Alaska has failed to provide the effective procedure required by the Fourteenth Amendment for vindicating the liberty interest in demonstrating innocence that the state law recognizes. I therefore join Part I of Justice Stevens’s dissenting opinion.
I would not decide Osborne’s broad claim that the Fourteenth Amendment’s guarantee of due process requires our recognition at this time of a substantive right of access to biological evidence for DNA analysis and comparison. I would reserve judgment on the issue simply because there is no need to reach it; at a general level Alaska does not deny a right to postconviction testing to prove innocence, and in any event, Osborne’s claim can be resolved by resort to the procedural due process requirement of an effective way to vindicate a liberty interest already recognized in state law, see Evitts v. Lucey, 469 U. S. 387, 393 (1985). My choice to decide this case on that procedural ground should not, therefore, be taken either as expressing skepticism that a new substantive right to test should be cognizable in some circumstances, or as implying agreement with the Court that it would necessarily be premature for the Judicial Branch to decide whether such a general right should be recognized.
There is no denying that the Court is correct when it notes that a claim of right to DNA testing, post-trial at that, is a novel one, but that only reflects the relative novelty of testing DNA, and in any event is not a sufficient reason alone to *104 reject the right asserted, see Reno v. Flores, 507 U. S. 292, 318-319 (1993) (O’Connor, J., concurring). Tradition is of course one serious consideration in judging whether a challenged rule or practice, or the failure to provide a new one, should be seen as violating the guarantee of substantive due process as being arbitrary, or as falling wholly outside the realm of reasonable governmental action. See Poe v. Ullman, 367 U. S. 497, 542 (1961) (Harlan, J., dissenting). We recognize the value and lessons of continuity with the past, but as Justice Harlan pointed out, society finds reasons to modify some of its traditional practices, ibid., and the accumulation of new empirical knowledge can turn yesterday’s reasonable range of the government’s options into a due process anomaly over time.
As for determining the right moment for a court to decide whether substantive due process requires recognition of an individual right unsanctioned by tradition (or the invalidation of traditional law), I certainly agree with the Court that the beginning of wisdom is to go slow. Substantive due process expresses the conception that the liberty it protects is a freedom from arbitrary government action, from restraints lacking any reasonable justification, id., at 541,[1] and a substantive due process claim requires attention to two closely related elements that call for great care on the part of a court. It is crucial, first, to be clear about whose understanding it is that is being taken as the touchstone of what is arbitrary and outside the sphere of reasonable judgment. And it is just as essential to recognize how much time society needs in order to work through a given issue before it makes sense to ask whether a law or practice on the subject is beyond the pale of reasonable choice, and subject to being struck down as violating due process.
It goes without saying that the conception of the reasonable looks to the prevailing understanding of the broad soci *105 ety, not to individual notions that a judge may entertain for himself alone, id., at 542, 544, and in applying a national constitution the society of reference is the nation. On specific issues, widely shared understandings within the national society can change as interests claimed under the rubric of liberty evolve into recognition, see Griswold v. Connecticut, 381 U. S. 479 (1965) (personal privacy); Lawrence v. Texas, 539 U. S. 558 (2003) (sexual intimacy); see also Washington v. Glucksberg, 521 U. S. 702, 752 (1997) (Souter, J., concurring in judgment), or are recast in light of experience and accumulated knowledge, compare Roe v. Wade, 410 U. S. 113 (1973), with Planned Parenthood of Southeastern Pa. v. Casey, 505 U. S. 833 (1992) (joint opinion of O’Connor, Kennedy, and Souter, JJ.).
Changes in societal understanding of the fundamental reasonableness of government actions work out in much the same way that individuals reconsider issues of fundamental belief. We can change our own inherited views just so fast, and a person is not labeled a stick-in-the-mud for refusing to endorse a new moral claim without having some time to work through it intellectually and emotionally. Just as attachment to the familiar and the limits of experience affect the capacity of an individual to see the potential legitimacy of a moral position, the broader society needs the chance to take part in the dialectic of public and political back and forth about a new liberty claim before it makes sense to declare unsympathetic state or national laws arbitrary to the point of being unconstitutional. The time required is a matter for judgment depending on the issue involved, but the need for some time to pass before a court entertains a substantive due process claim on the subject is not merely the requirement of judicial restraint as a general approach, but a doctrinal demand to be satisfied before an allegedly lagging legal regime can be held to lie beyond the discretion of reasonable political judgment.
*106 Despite my agreement with the Court on this importance of timing, though, I do not think that the doctrinal requirement necessarily stands in the way of any substantive due process consideration of a postconviction right to DNA testing, even as a right that is freestanding. Given the pace at which DNA testing has come to be recognized as potentially dispositive in many cases with biological evidence, there is no obvious argument that considering DNA testing at a general level would subject wholly intransigent legal systems to substantive due process review prematurely. But, as I said, there is no such issue before us, for Alaska does not flatly deny access to evidence for DNA testing in postconviction cases.
In another case, a judgment about appropriate timing might also be necessary on issues of substantive due process at the more specific level of the State’s conditions for exercising the right to test. Several such limitations are potentially implicated, including the need of a claimant to show that the test results would be material as potentially showing innocence, and the requirement that the testing sought be capable of producing new evidence not available at trial. But although I assume that avoiding prematurity is as much a doctrinal consideration in assessing the conditions affecting a substantive right as it is when the substantive right itself is the subject of a general claim,[2] there is no need here to resolve any timing issue that might be raised by challenges to these details.
*107 Osborne’s objection here is not only to the content of the State’s terms and conditions, but also to the adequacy of Alaska’s official machinery in applying them, and there is no reason to defer consideration of this due process claim: given the conditions Alaska has placed on the right it recognizes, the due process guarantee requires the State to provide an effective procedure for proving entitlement to relief under that scheme, Evitts, 469 U. S., at 393, and the State has failed. On this issue, Osborne is entitled to relief. Alaska has presented no good reasons even on its own terms for denying Osborne the access to the evidence he seeks, and the inexplicable failure of the State to provide an effective procedure is enough to show a need for a 42 U. S. C. § 1983 remedy, and relief in this case. Justice Stevens deals with this failure in Part I of his dissent, which I join, and I emphasize only two points here.
In effect, Alaska argues against finding any right to relief in a federal §1983 action because the procedure the State provides is reasonable and adequate to vindicate the post-trial liberty interest in testing evidence that the State has chosen to recognize.[3] When I first considered the State’s position I thought Alaska’s two strongest points were these: (1) that in Osborne’s state litigation he failed to request access for the purpose of a variety of postconviction testing that could not have been done at time of trial (and thus sought no new evidence by his state-court petition); and (2) that he failed to aver actual innocence (and thus failed to place his oath behind the assertion that the evidence sought would be material to his postconviction claim). Denying him any relief under these circumstances, the argument ran, *108 did not indicate any inadequacy in the state procedure that would justify resort to § 1983 for providing due process.
Yet the record shows that Osborne has been denied access to the evidence even though he satisfied each of these conditions. As for the requirement to claim testing by a method not available at trial, Osborne’s state-court appellate brief specifically mentioned his intent to conduct short tandem repeat analysis, App. 171, 175, and the State points to no pleading, brief, or evidence that Osborne ever changed this request.
The State’s reliance on Osborne’s alleged failure to claim factual innocence is equally untenable. While there is no question that after conviction and imprisonment he admitted guilt under oath as a condition for becoming eligible for parole, the record before us makes it equally apparent that he claims innocence on oath now. His affidavit filed in support of his request for evidence under § 1983 contained the statement, “I have always maintained my innocence,” id., at 226, ¶ 2, followed by an explanation that his admission of guilt was a necessary gimmick to obtain parole, id., at 227, ¶ 7. Since the State persists in maintaining that Osborne is not entitled to test its evidence, it is apparently mere makeweight for the State to claim that he is not entitled to § 1983 relief because he failed to claim innocence seriously and unequivocally.
This is not the first time the State has produced reasons for opposing Osborne’s request that collapse upon inspection. Arguing before the Ninth Circuit, the State maintained that the DNA evidence Osborne sought was not material; that is, it argued that a test excluding Osborne as the source of semen in the blue condom, found near the bloody snow and spent shell casing in the secluded area where the victim was raped by one man, would not “establish that he was factually innocent” or even “undermine confidence in ... the verdict.” Reply Brief for Appellants in No. 06-35875 (2008), p. 18; see also 521 F. 3d 1118, 1136 (CA9 2008). Such an argument is *109 patently untenable, and the State now concedes that a favorable test could “conclusively establish Osborne’s innocence.” Reply to Brief in Opposition 8.
Standing alone, the inadequacy of each of the State’s reasons for denying Osborne access to the DNA evidence he seeks would not make out a due process violation.[4] But taken as a whole the record convinces me that, while Alaska has created an entitlement of access to DNA evidence under conditions that are facially reasonable, the State has demonstrated a combination of inattentiveness and intransigence in applying those conditions that add up to procedural unfairness that violates the Due Process Clause.

 Mutatis mutandis, the same is true of our notions of life and property, subject to the same due process guarantee.

 It makes sense to approach these questions as governed by the same requirement to allow time for adequate societal and legislative consideration that substantive liberty interests should receive at a general level. As Judge Luttig has pointed out, there is no hermetic line between the substantive and the procedural in due process analysis, Harvey v. Horan, 285 F. 3d 298, 318-319 (CA4 2002) (opinion respecting denial of rehearing en bane), and in this case one could argue back and forth about the better characterization of various state conditions as being one or the other.

 Alaska does not argue that the State’s process for vindicating the right to test, however inadequate, defines the limit of the right it recognizes, with a consequence that, by definition, the liberty interest recognized by the State calls for no process for its vindication beyond what the State provides.

 This Court is not in a position to correct individual errors of the Alaska Court of Appeals or Alaska officials, as § 1983 does not serve as a mechanism to review specific, unfavorable state-law determinations.